### ELFORD v ELFORD

Ohio Appeals, 2nd Dist.,
Montgomery Co.

No. 1717. Decided May 11, 1942.

Baver & Doan, Miamisburg, for plaintiff-appellee.

Howard P. Williamson, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from an order of the Court of Common Pleas, Montgomery County, Ohio, Division of Domestic Relations, granting the care, custody and control of Luther Elford, a minor child of eight years, to plaintiff-appellee, and modifying a former order made at the time a decree of divorce was granted to plaintiff-appellee awarding the custody of said minor child to his mother, defendant-appellant.

The facts essential to an appreciation of the application of the assignments of error are that, on May 24, 1937, in the Common Pleas Court of Montgomery County, Division of Domestic Relations, the plaintiff secured a decree of divorce from the defendant upon the grounds of gross neglect of duty and that the defendant had a husband living, from whom she was not divorced at the time of her marriage to the plaintiff. The court in the same decree granted the custody, care and control of the minor child, Luther Elford, then three years of age, to the defendant and ordered the plaintiff to pay $4.00 per week for the support of said child.

On August 7, 1941, the plaintiff filed a motion in the Common Pleas

Court, Division of Domestic Relations,

"To amend a former entry in this matter, in this; that the care, custody and control of the minor child of the parties hereto, towit: Luther Elford, be changed from the defendant, Murba Elford Sarmir, to the plaintiff, Byron Elford."

On the 9th day of August, 1941, the Sheriff of Montgomery County served a notice of the filing of the motion upon the defendant and that it would be heard Monday, August 11, 1941, at 1:30 P. M. before Mark E. Eshbaugh, Referee of the Juvenile Court of Montgomery County, Ohio.

On September 11, 1941, the judge of the Common Pleas Court, Division of Domestic Relations, ordered that the case be certified to Juvenile Court for further proceedings as to minor child, Luther Elford, in accordance with §8034-1 GC. "Jurisdiction reserved and certified to Juvenile Court to modify in any respect order regarding minor child, Luther Elford."

On September 11, 1941, the motion came on for hearing before Mark E. Eshbaugh, Referee of Juvenile Court of Montgomery County, whereupon counsel for defendant objected to the jurisdiction of the Referee to hear the motion, whereupon the Referee stated,

"Well, Mr. Williamson, if there is going to be an objection to my hearing this as Referee, we won't go through with the proceeding. We will just set a new time. It has been certified to the Juvenile Court."

The bill of exceptions then bears this notation,

"Thereupon Mr. Williamson, Mr. Baver and Mr. Eshbaugh conferred with the court, and the hearing was resumed before the Referee."

The Referee took the testimony of the witnesses offered by the respective parties and during the hearing, counsel for defendant demanded that the records of the Juvenile Court as pertaining to the interviews by the Referee or any officer of the Juvenile Court be attached to the record and made a part thereof; and the record shows that this was done by agreement.

The Referee returned extended findings of fact and recommended that the custody of the minor child be changed from the defendant to the plaintiff. After objections and exceptions had been interposed to the findings and recommendations of the Referee the court, upon review of all of the evidence before the Referee, adopted and confirmd his report with one modification and ordered the custody of the minor child changed, as heretofore stated.

The custodial order is signed by Nicholas, Judge, and bears the caption, In the Common Pleas Court of Montgomery County, Ohio, Division of Domestic Relations, and there is nothing other or further to indicate that the order was made by a Juvenile Judge.

The following errors are assigned:

(1) The court erred in certifying this cause to the Juvenile Court.
(2) The court erred in ordering this cause tried before the Referee over the objection of defendant-appellant.
(3) The Referee was without authority in law to conduct the trial of this cause.
(4) The Referee erred in rejecting evidence offered by the defendant-appellant.
(5) The Referee erred in admitting testimony over the objec-

tion of the defendant-appellant.

(6) Said Referee erred in considering as evidence statements and reports of investigators, policewomen and others not called as witnesses, and said reports, statements and opinions were not introduced in evidence at said hearing.

(7) That this court erred in accepting the findings of fact of said Referee and. in accepting the said recommendations of said Referee.

(8) That the court erred in sustaining the motion of the plaintiff-appellee for an order to amend the former order in this matter and in modifying said order * *.

(9) That the decision is contrary to the weight of the evidence and the law.

The 4th and 5th assignments are not well made. No evidence proffered by the defendant was erroneously rejected and none offered by the plaintiff over the objection of the defendant was admitted to the 'prejudice of the defendant.

(1) Error in certifying the cause to the Juvenile Court.

(2) Error in referring cause to Referee.

(3) Referee without authority to conduct the trial.

We have held in **Miami Conservancy District v Silvey, 8 Abs 668** that the Judge of the Court of Common Pleas, Division of Domestic Relations, of Montgomery County, may exercise the general jurisdiction of a Judge of the Court of Common Pleas of that county.

By **Sec. 1532 GC,** in Montgomery County, the Judge whose term commences January 1, 1941, is designated Judge of the .Court of Common Pleas, Division of Domestic Relations, invested with all powers provided in the Juvenile Court Code and that "there shall be assigned to such Judge all juvenile work and all divorce and alimony cases and cases involving the care and custody of children in said county, * *." In addition to this authorization further like provision is made in §1639-7 GC, which provides:

"The Juvenile Court or Court of Common Pleas, Division of Domestic Relations of any county, separately and independently created, established and functioning as such by law, shall have and exercise the powers and jurisdiction conferred in this chapter."

**Sec. 8034-1 GC,** authorizes the Common Pleas Court, which has made an award of custody of a minor child, to certify the same to the Juvenile Court for further proceedings according to law, and upon such certification the jurisdiction of the Common Pleas Court, * *, **shall cease.** (Emphasis ours). We recognize the correctness of this procedure in **Sonnenberg v The State, 40 Oh Ap 475.**

Thus, the Common Pleas Court, Division of Domestic Relations, as such, has full and exclusive authority to function as the Juvenile Court in that county. Whether or not there is a Juvenile branch of the Domestic Relations Court or the Domestic Relations Judge functions as Juvenile Judge under that title we are not informed by the record. Inasmuch as the Domestic Relations Judge certified the divorce case and the motion for modification of the custody of the minor to the Juvenile Court, it appears that the Judge was of opinion.that there was distinction to be made between these two courts. If so, then after the certification every order made by the court should have carried the designation of Juvenile Judge or some title which would identify

it as having been made in the Juvenile Court. Instead of this procedure, after the certification to the Juvenile Court, reference was made to a referee evidently appointed under §1639-21 GC, and after his report the order and judgment was made by the Judge of the Domestic Relations Court, so designated, and all subsequent orders and the signing and settling of the bill of exceptions was so authenticated. We are unable to determine the reason for the procedure adopted. This action of the court is not challenged on the appeal. We can not say that the court had no authority to submit the matter to the referee, nor that the authority of the referee is confined exclusively to proceedings or charges which arise originally under the Juvenile Court Code.

We are satisfied, however, that, if distinction is to be made between the action of the Domestic Relations Judge, as such, and as Juvenile Judge, then after certification of the cause, as relates to █ the custody of the child to the Juvenile Court, it is reposed in that court permanently and no reservation may be made by the Domestic Relations Division of the Court to again consider this branch of the cause. §8034-1 GC.

It is asserted, although the record does not disclose it, that the referee is not an attorney-at-law, and therefore, ineligible to serve as referee under appointment of the Juvenile Court. As the question is not made, we do not pass upon it but call attention to the fact that §1639-21 GC, authorizing the Judge to appoint referees, does not specifically require that the appointee shall be an attorney at law.

It is doubtful, indeed, if counsel for appellant may properly urge assignment of error No. 2, inasmuch as the referee offered to step aside if counsel insisted upon his objection and after the referee returned to hear the submission counsel did not again interpose any objection to his service.

No. 6. Referee erred in considering as evidence statements and reports of investigators, police women and others not called as witnesses and said report, statements and opinions were not introduced in evidence at said hearing. Appellant is not in position to urge this claimed error for the reason that it was upon the demand of her counsel that the records were brought into court and attached to the record and made a part thereof, and the action was the equivalent of the due submission of the records as exhibits.

The question sought to be raised is fundamental, vital and important and if and when properly presented will demand the most careful attention of this court.

The other matters may be considered and disposed of upon the 9th assignment, namely, That the order is contrary to the weight of the evidence and the law.

This brings us to the material and substantial question on this record. It appears that defendant-appellant has been a party to almost unprecedented marital experiences. Although but 30 years of age, she has been married six times to five individuals. This statement in itself, without further explanation, has the effect or marking her an unstable person. We do not purpose to discuss at length her marital ventures except to say that upon the facts developed, she is not as culpable as the bare state-

ment of the number of marriages, to which she has been a party, would imply. Suffice to say that all of her marriages, with the exception of two, were before the court which heard the divorce case and, notwithstanding, the custody of the minor child was awarded to the defendant. The order thus made was conclusive of the rights of the parties up to that time upon the question where the custody of the minor should be reposed. The conclusiveness of this order is recognized unless and until changed conditions affecting the welfare of the minor have rendered it proper and appropriate that the custodial order be changed.

Modification of alimony orders is controlled by the same rule as custodial orders. As to such, it is said:

"The essential requisites of an application for modification, *, are they shall inform the court, as well as the opposite party, of the conditions or circumstances relied upon as justifying or requiring a modification of the original decree and that the grounds alleged or assigned must not relate to circumstances and facts that existed, and were, or might have been pleaded in the former action but to new facts thereafter transpiring, which are of such a character as to make the modification necessary to suit such altered condition of the parties." 14 O. Jur. 519.

Olney v Watts, 43 Oh St 499, Sager v Sager, 5 Oh Ap 487, Monahan v Monahan, 14 Oh Ap 116.

In Graviess v Graviess, 7 O. C. C. (N. S.) 135, the rule is carried into the syllabus,

"The continuing jurisdiction which is vested in the court of common pleas with reference to the custody of children for the purpose of modifying orders in divorce proceedings does not authorize a rehearing of a matter theretofore submitted and determined, but is only to be called into exercise when a substantial change in the condition of the parties requires a modification of the former order."

How does this record stand upon the question of substantial change in the condition of these parties requiring a modification of the order under consideration? The motion to modify makes no claim of substantial change, the finding and order of the court recites no such substantial change as a basis for the modification. The motion merely seeks an order to amend the former custodial order without more. The referee in his findings of fact sets forth much of the subject matter affecting the custody of children which must have been under consideration and passed upon in the original divorce proceedings but makes no conclusion of changed conditions. The decision of the Judge and the judgment of the court make no comment respecting changed conditions, merely recite that a change of custody is for the best interests of the minor child.

If it clearly appeared from the record that the order was made by reason of changed conditions, we would be disposed to support the judgment notwithstanding the manifest irregularity. However, upon a very careful reading of this record, we are convinced that there has been no substantial change in the relation of these parties affecting the right to the custody of the minor.

There is no suggestion in the record that the mother of the min-

or is not of good moral repute. It appears that she is earning sufficient money to care for and support her child. It is not denied that she has a suitable person to care for and train her child while she is away from her home. The mother works from about 8 o'clock in the morning until 2 o'clock in the afternoon.

Although the defendant has been married two times since the plaintiff divorced her and at the time of the hearing on the motion a married woman, she was not living with her husband, had not been for some time, had sued him for divorce and stated that she did not purpose again to live with him. So that, any unfavorable influence which might have resulted by reason of the stepfather living in the home with the minor was then removed from the case and required no consideration. Although it does not appear in the record, it is stated by counsel, and we presume it is a fact, that since the hearing defendant has secured a divorce from her last husband and is now a single person.

The only substantial matter that we can find upon which the referee based his finding, which is not found to be a changed condition, is that the defendant and her two children, one of which is the minor whose custody is under consideration, occupy a small bedroom for sleeping quarters. It is not denied that they have the full use of a six room house and bath.

This mother, since the minor was three years of age, has taken care of him and obviously carried not only the parental cares incident to his custody but has also provided the greater portion of the expense incident to his upkeep. She testified that at no time has the $4.00 weekly payment made by the father even met the cost of the minor's board. It is obvious that it is sadly insufficient to provide full maintainance.

It is a serious matter to take from a mother the custody of a young child and place it with a stepmother. This is true, notwithstanding the fact that the record discloses the stepmother to be an estimable woman. We recognize the law in Ohio to be that there is no distinction between the right of the father and the mother to have the custody of their children. However, there is a natural right in the mother to have the first privilege to nurture and care for her own young based upon the common experience that the child's best interests are ordinarily served when assured the love, care and attention of its mother. As stated in Vincent v Vincent 6 N. P. 474, the court requires a showing of peculiar unfitness to justify a refusal of the court to award a mother the custody of a child eight years of age.

Then, too, the status of the plaintiff father is not such as to make it apparent and definite that it would be for the better interests of the child that he have its custody.

The referee in his report made the specific finding,

"Defendant * * * *, married Michael Sarmir, her present husband, April 4, 1940, and was not divorced from Hubert Grugin, whom she married the second time after divorce from the plaintiff, until April 22, 1940; that minor child, Luther, has been staying in the home of defendant and man to whom she is illegally married during the time defendant and her

present husband were living together."

This finding reflects upon the character of the defendant and, if true, indicates unfavorable moral surroundings about the home provided the minor by his mother. The court upon exceptions to the findings, determined that the plaintiff was married to her present husband on May 4, 1940, instead of April 4, 1940. It thus conclusively developed that she was not a married woman when she married her last husband and that the minor was not staying in the home of the defendant with a man to whom she was illegally married. There was no modification of the imputation affecting the character of the defendant. So that, we reiterate that the only basis for the modification of the order was the marital status of the defendant, and the statement of an investigator of the Juvenile Court that the defendant was sleeping in a small crowded bedroom with her two children. The marital status of defendant as of the date of the hearing did not support the order.

Upon the question of changed conditions there is nothing to disclose where defendant was living when the custody of the minor was awarded to her, nor that her surroundings were not as favorable to the proper housing of the child at the time of the modification hearing as at the time of the award of his custody to her.

The family of which the defendant is a part is made up of a Mr. and Mrs. Carmean, two children, the defendant, one child, Joy, aged 14, by a former marriage and the child, Luther. Whether or not the housekeeper stays at the home all the time does not appear. So, it may

be said, that there are seven people living in the 7 room house. The referee found that the defandant's home is moderately furnished, well-kept, and that the children appear well cared for.

Minnie Rhotehamel, investigator with the Probation Department of the Juvenile Court, testified that defendant lived in a six room house, probably did not count the bath, modern, very nicely furnished and very neat and clean. "It looked to me as though they had two lots there, with quite a wooded section next to the house and behind it, and it was explained to me that that was the place where the children play. They have a housekeeper, both a man and woman, with whom Mrs. Sarmir lives, are employed at hotels in town and it was explained to me that there is a housekeeper who takes care of the children and the home while the grown people are away at work."

The home in which the plaintiff lives is presumably the same place where he resided at the time the divorce decree was granted, as he testifies, he moved there in 1934 and bought the place in 1938. It was originally a school house which he began to remodel in 1938, the work of which has not yet been completed. When finished it will have seven rooms, including four bedrooms. The family of the plaintiff at the time of the hearing on the motion to modify consisted of himself, his wife, who is his third wife, a son Bruce, aged 15, by plaintiff's first wife, a child by the present marriage, 19 months old and another child was expected within a few weeks following the date of the hearing and the mother of plaintiff, who was to remain with plaintiff's wife, at least until after her confinement. So that, there were

six persons living in the plaintiff's home and if the son, Luther, should live with him, there would be seven.

It is difficult to say that the home of the plaintiff will be any less congested if Luther would live with him than the home of the defendant at the time of the hearing. If the custody of Luther be awarded to the father, the family then would be made up of a father of all of the children but plaintiff's wife is not the mother of Luther.

It appears in the record that the plaintiff served time under sentence in the Workhouse in Franklin County for failure to pay alimony, probably support money, for his son, Bruce. This fact may well have influenced the trial judge at the time of the divorce hearing to award the custody of Luther to the mother inasmuch as the child has at all times been well provided for by the defendant.

We are loth to disturb the order of the court affecting the custody of minors but upon this record, which we have given the most careful consideration, we do not find sufficient essential proof of such a change of condition since the original order affecting the welfare of the child to support the order of modification. Further, in view of the fact that nothing is said about changed conditions in the motion, in any of the findings nor in the final order, there is grave doubt if the court made the order of modification upon the proper legal basis.

The order will be reversed and cause remanded.

GEIGER, PJ., & BARNES, J., concur.